UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARA GRANDA, an individual; JOSE GRANDA, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT SYSTEM; and DOES 1-10, inclusive,<br><br>Defendants. | No. 2:21-cv-01256-MCE-KJN<br><br><br>**MEMORANDUM AND ORDER** |

Through the present lawsuit, Plaintiffs Sara Granda and Jose Granda allege they have been discriminated and/or retaliated against for seeking the medical reimbursement needed to procure skilled nursing services through a policy of health insurance issued by Defendant California Public Employees' Retirement System ("Defendant" or "CalPERS"). Plaintiffs assert a single cause of action for Violation of Title II of the Americans with Disabilities Act , 42 U.S.C. §§ 12131, et seq. ("Title II of the ADA").

///

///

///

CalPERS now moves for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c),[1] on grounds that Plaintiffs have not stated a viable claim for violation of Title II. As set forth below, that Motion is DENIED.[2]

**BACKGROUND**

Plaintif Sara Granda ("Sara") was rendered a paraplegic as a result of a motor vehicle accident that occurred in 1997 when she was 17. Because she is ventilator dependent, Sara needs 24-hour a day skilled nursing assistance as opposed to non-licensed caregiving/attendant care in order to reside at home. Compl., ECF No. 1, ¶ 18. Given her permanent disability, Sara is perpetually at high risk of life-threatening medical complications if the appropriate skilled nursing care is not provided.

Plaintiff Jose Granda ("Jose") has been employed at California State University, Sacramento for more than 37 years. As such, he is enrolled in the CalPERS system and receives health care coverage through CalPERS for himself and his family. Because Sara became disabled prior to the age of 26, she qualifies under Jose's insurance as a disabled dependent. In addition, Sara is also an employee of the State of California herself, having worked as an attorney for the Department of Health Care Services for the past 11 years. Id. at ¶ 11.

Sara alleges that, given the acuity of her condition, she needs access to consistent care in order to avoid hospitalization. She claims that under the terms of an agreement reached with CalPERS in approximately 1998, the agency facilitated the provision of appropriate health care at home by converting dollars available under its policy for skilled nursing care to be administered at Sara's own residence. Id. at ¶ 22. After 2014, however, the incidence of Sara's hospitalizations escalated dramatically with

---

[1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

[2] Having determined that oral argument would not be of material assistance, the Court submitted this matter on the briefs in accordance with the provisions of E.D. Local Rule 230(g).

six separate admissions between 2014 and 2021.  Sara alleges those hospitalizations could have been avoided had appropriate and consistent health care been provided to her at home.  Id. at ¶ 19.

According to the Complaint, the problem rests with the fact that the CalPERS reimbursement rate for her care is 40-50% less than the market rate for comparable skilled nursing services in the greater Sacramento area.  This discrepancy has been compounded by the high demand for nurses generally as a result of the COVID-19 crisis.  The low rates Sara is able to provide have resulted, she claims, in constant turnover and retraining that have adversely affected her care and increased her rate of hospitalization, all imperiling her ability to live at home in the least restrictive environment.  Sara asserts that CalPERS' refusal to increase the reimbursement rates for the skilled nursing care she needs constitutes discrimination on the basis of her disability.

In 2020, these shortcomings prompted Plaintiffs to seek modification of the 1998 agreement so as to protect Sara's access to appropriate services.  Jose has advocated on his daughter's behalf and claims that CalPERS has retaliated against him by attempting to interfere with his efforts in that regard by prohibiting his direct communication with CalPERS' Board of Administration.  Id. at ¶¶ 29-30.

As indicated above, Plaintiffs' Complaint, filed on July 16, 2021, contains a single cause of action for violation of Title II of the ADA.  Defendant moves for judgment on the pleadings on grounds that the circumstances of Plaintiffs' claim are not cognizable under Title II since they do not involve discrimination in the provision of public services, but instead are employment-related and therefore redressable, if at all, only under Title I.

## STANDARD

Under Rule 12(c), "a party may move for judgment on the pleadings" after the pleadings are closed "but early enough not to delay trial."  A motion for judgment on the pleadings pursuant to Rule 12(c) challenges the legal sufficiency of the opposing party's

3

pleadings. See, e.g., Westlands Water Dist. v. Bureau of Reclamation, 805 F. Supp. 1503, 1506 (E.D. Cal. 1992).  Any party may move for judgment on the pleadings under Rule 12(c) after the pleadings are closed but within such time as to not delay trial.

The standard for evaluating a motion for judgment on the pleadings is essentially the same as the standard applied to a Rule 12(b)(6) motion. Dworkin v. Hustler Magazine, Inc., 867 F.2d 1188, 1192 (9th Cir. 1989). A motion for judgment on the pleadings should only be granted if "the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1989) (internal citation omitted). Judgment on the pleadings is also proper when there is either a "lack of cognizable legal theory" or the "absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988). In reviewing a Rule 12(c) motion, "all factual allegations in the complaint [must be accepted] as true and construe[d] . . . in the light most favorable to the non-moving party." Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009). Judgment on the pleadings under Rule 12(c) is warranted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Deveraturda v. Globe Aviation Sec. Servs., 454 F.3d 1043, 1046 (9th Cir. 2006) (internal citations and quotation marks omitted).

Courts have discretion to grant leave to amend in conjunction with motions made pursuant to Rule 12(c). Lonberg v. City of Riverside, 300 F. Supp. 2d 942, 945 (C.D. Cal. 2004) (citation omitted). Generally, leave to amend a complaint is denied only if it is clear that the deficiencies of the complaint cannot be cured by amendment. DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992).

///

///

///

4

## ANALYSIS

Title II of the ADA prohibits discrimination in the provision of public services and specifies, inter alia, that no qualified individual with a disability shall, "by reason of such disability," be excluded from participation in, or be denied the benefits of, a public entity's services, programs or activities. 42 U.S.C. § 12132. As part of Title II's protections, the Attorney General was instructed to issue regulations implementing the proscriptions against discrimination contained within Title II. Id. at § 12134(a). One of those regulations, the so-called "integration" mandate, requires a "public entity [to] administer . . . programs  . . . in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R.§ 35.130(d). Another regulation calls for public entities to "make reasonable modifications" to avoid "discrimination on the basis of disability." Id. at § 35.130(b)(7).

In Olmstead v. L.C. ex rel. Zimring, 527 U.S. 581 (1999), the Supreme Court recognized that these provisions require that disabled individuals be placed into a community setting, provided the individuals would benefit and such placement can be reasonably accommodated. As the court reasoned, the "[i]nstitutional placement of persons who can handle and benefit from community settings perpetuates unwarranted assumptions that persons so isolated are incapable or unworthy of participating in community life" and thereby qualifies as discrimination. Id. at 583. Instead, recognizing Title II's integration mandate, Olmstead noted that services to the disabled "should be provided in the setting that is least restrictive of the person's personal liberty." Id. at 599.

In the present matter, Plaintiffs allege that Defendant's refusal to provide reimbursement adequate to cover the skilled nursing care Sara needs runs afoul of the integration mandate recognized by Olmstead. This is because, according to Plaintiffs, the rates for such care authorized by CalPERS are inadequate to ensure that Sara receives the consistent care necessary to live at home and work as an attorney at the California Department of Health Services. Because Sara has successfully been able to

both live at home and work over the past 11 years provided such care is afforded to her, Plaintiffs assert that the integration mandate and Olmstead's holding make Defendant's refusal to accommodate the care she requires qualify as discrimination.

Plaintiffs argue that Sara's ventilator-dependent status, and the fact that without skilled nursing care at home she has to be hospitalized in an acute-care facility, meaning that she indeed is subject to an undue risk of institutionalization (through hospitalization) if her at-home services are compromised. As indicated above, Plaintiffs rely entirely on Title II in bringing the present lawsuit to protect Sara's rights in that regard. Plaintiffs claim that even if Defendant's insurance coverage provides the same skilled nursing reimbursement to the disabled and non-disabled alike, under Olmstead a facially neutral provision can still qualify as discrimination under Title II if it fosters unnecessary isolation and therefore violates the integration mandate applicable to disabled individuals. Id. at 597.

CalPERS inexplicably attempts to distinguish Olmstead's applicability to the case at bar by arguing that it "has never been applied in the context of employment discrimination." Def.'s Reply, ECF No. 15, 2:17-18. Plaintiffs' complaint, however, makes it perfectly clear that this case is about disability discrimination, so trying to circumvent Olmstead's reach on that basis has no merit . Additionally, contrary to Defendant's suggestion otherwise, Plaintiffs' complaint has the averments necessary to state a claim for disability discrimination. Not only does Sara claim that she needs consistent skilled nursing care to avoid a restrictive placement within the confines of an acute care hospital, she also argues that she has in fact been hospitalized over the last seven years because of problems occasioned by her difficulty in securing dependable care given CalPERS' limited reimbursement levels. In addition, as a paraplegic needing the assistance of a ventilator to breathe, there can be no question that Sara is disabled.

Even if Sara has stated a viable claim for disability discrimination under Olmstead, however, CalPERS still argues that she cannot come within the confines of Title II and accordingly argues for dismissal on that basis as well. Defendant correctly points out

that Title II was enacted to remedy discrimination against the disabled in the provision of public services. See, e.g., Tennessee v. Lane, 541 U.S. 509, 524-25 (2004). CalPERS claims that Title II is inapplicable because Title I of the ADA, addresses discrimination "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment" and accordingly applies to the present dispute. 42 U.S.C. § 12112(a). According to CalPERS, the gravamen of Plaintiffs' Complaint implicates Title I and not Title II because the insurance CalPERS provides to Sara is attributable to Plaintiff Jose Granda's state employment. The Court disagrees.

As support for its position, CalPERS relies largely on the Ninth Circuit's decision in Zimmerman v. Oregon Dep't of Justice, 170 F.3d 1169 (9th Cir. 1999), where the court addressed the interplay between the types of disability discrimination subject to Title I and Title II. The court found that Congress did not intend Title II to apply to employment because such employment was not commonly considered a "service, program, or activity of a public entity" so as to come within Title II. The court went on to reason that Title II is intended to address an "output" of a public agency that an individual would expect to receive as opposed to an "input" like the staffing/employment necessary to facilitate provision of the public services by the agency.

While CalPERS argues that Zimmerman is on all fours with the present matter, the Court disagrees. The plaintiff in Zimmerman claimed he was terminated by the defendant, a public entity, because of a disabling eye condition that left him visually impaired. Id. at 1171. Here, on the other hand, neither Sara nor Jose were employees of CalPERS. Nor is there an employment practice like job termination involved. As Plaintiffs point out, every case cited by CalPERS for the proposition that Zimmerman is controlling involved a plaintiff who was either a current or former employee of the defendant involved, and whose claims arose from actions taken or not taken within the employment context by that employer. See, e.g., Ahmed v. Regents of Univ. of California, No. 17cv00709-MMA (NLS), 2018 WL 747796 at *12 (S.D. Cal. Feb. 7, 2018)

7

(plaintiff, an employee of the University of California, was denied leave to assert a Title II claim on grounds that any such amendment would be futile under Zimmerman); Kitchen v. Lodi Unified Sch. Dist., No. 2:14-cv-01436 WBS-EFB, 2014 WL 5817320 at * 3-4 (E.D. Cal. Nov. 5, 2014) ("plaintiff's claims arise from her employment with defendant"); Allford v. Barton, No. 1:14-cv-00024-AWI JLT, 2015 WL 2455138 at *7 (E.D. Cal. May 22, 2015) (because the plaintiff's claims arose from a prior employment relationship with the defendant, he could not assert a claim under Title II).

The analysis provided by Zimmerman that is instructive in the present matter is the distinction it draws between the "output" and "input" of a public agency in deciding whether Title II applies to a particular disability discrimination claim. In finding that Title II did not apply to employment by a public entity, the court interpreted Title II's proscription against denial of benefits afforded by "the services, programs or activities of a public entity" as extending to such benefits and services as an "output" of the public entity (what the public entity does) rather than to an "input" like employment by the public entity allowing it to fulfill its particular mission. Zimmerman, 170 F.3d at 1174.

Here, on the other hand, not only is CalPERS not Plaintiffs' employer, its very purpose is to provide benefits, including insurance coverage, to public employees. Therefore, unlike Zimmerman, the provision of such benefits is in fact the "output" of CalPERS making Plaintiffs' claims cognizable under Title II. In Hason v. Medical Bd. of California, 279 F.3d 1167 (9th Cir. 2002), a case decided after Zimmerman, the Ninth Circuit reiterated this distinction. There, the plaintiff sued the Medical Board on grounds that its refusal to provide him with a license to practice medicine violated, inter alia, Title II. In reversing the district court's dismissal of plaintiff's Title II claim for failure to state a claim, the Ninth Circuit found that "[a]lthough medical licensing does occur within the employment context, medical licensing is not equivalent to employment" since the "Medical Board does not make employment decisions." Id. at 1172. In applying the input/output distinction utilized by Zimmerman, the court found that "[m]edical licensing is

///

without a doubt something that the Medical Board 'does'", and that accordingly it is indeed an "output" of the Board subject to Title II.  Id. at 1173

Here, like Hason, the provision of insurance coverage is unquestionably something that CalPERS "does."  As such, it is an "output" of CalPERS as a public agency and therefore Plaintiffs herein can state a claim under Title II against CalPERS for discrimination due to disability.[3]  This is particularly true given Hason's recognition that remedial legislation like the ADA should be construed "broadly in order to effectively implement the ADA's fundamental purpose of "providing a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities."  Id. (internal citation omitted).

Finally, with respect to Jose's claim that he was retaliated against for advocating on his daughter's behalf and can accordingly state a claim under Title II for retaliation on that basis, Defendant's assertion that he cannot state a viable cause of action is equally unavailing.  Title II extends to individuals who allege, like Jose, that they were retaliated against for attempting to protect the rights of a disabled person like Sara.  See Barker v. Riverside Cty. Off. Of Educ., 584 F.3d 821, 827 (9th Cir. 2009).

**CONCLUSION**

For all the above reasons, Defendant CalPERS' Motion for Judgment on the Pleadings (ECF No. 11) is DENIED.

IT IS SO ORDERED.

Dated:  August 9, 2022

MORRISON C. ENGLAND, JR
SENIOR UNITED STATES DISTRICT JUDGE

---

[3] This cuts against CalPERS' argument that Title II should be foreclosed simply because "but for" Jose's employment with the state, Sara would not be qualified to receive insurance coverage under CalPERS as his disabled dependent.

9