ELISE R. SANGUINETTI (SBN 191389)
MATTHEW J. KITA (SBN 321562)
**ARIAS SANGUINETTI WANG & TORRIJOS**
2200 Powell Street, Suite 740
Emeryville, CA 94608
Telephone: (510) 629-4877
Email:  elise@aswtlawyers.com
  matthew@aswtlawyers.com

*Attorneys for Plaintiffs Sara Granda and Jose Granda*

PAUL L. GARCIA (SBN 302694)
**HOOPER LUNDY & BOOKMAN P.C.**
101 W. Broadway, Suite 1200
San Diego, CA 92101
Telephone: (619) 744-7300
E-Mail:  pgarcia@hooperlundy.com

*Attorneys for Plaintiff Sara Granda*

ALICIA W. MACKLIN (SBN 266325)
ANELIESE I. CASTRO (SBN 352612)
**HOOPER LUNDY & BOOKMAN P.C.**
1875 Century Park East, Suite 1600
Los Angeles, CA 90067
Telephone: (310) 551-8111
E-Mail:  amacklin@hooperlundy.com
  acastro@hooperlundy.com

*Attorneys for Plaintiff Sara Granda*

ERIN SCLAR (SBN 334471)
**HOOPER LUNDY & BOOKMAN P.C.**
44 Montgomery Street, Suite 3500
San Francisco, California 94104
Telephone: (415) 875-8500
E-Mail:  esclar@hooperlundy.com

*Attorneys for Plaintiff Sara Granda*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| SARA GRANDA, an individual, and JOSE GRANDA, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT SYSTEM; and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 2:21-cv-01256-MCE-CSK<br><br>Hon. Morrison C. England, Jr.<br><br>**ADDITIONAL BRIEF AND EVIDENCE**<br><br>Trial Date:  None Set |

ADDITIONAL BRIEF AND EVIDENCE

## I. INTRODUCTION

Plaintiff Sara Granda brought a motion for a temporary restraining order to "prevent Sara from suffering avoidable and unwanted re-institutionalization, serious medical complications, or death" because she did not have needed skilled nursing care. ECF No. 49-1 ("Motion") at 4. Defendant California Employees' Public Retirement System ("CalPERS") has not provided Sara the 24-hour skilled nursing care that she needs due to her disability, contrary to *two* orders from this Court requiring CalPERS to act. Decl. of S. Granda in Support of Additional Brief and Evidence ("Third Granda Decl.") ¶¶ 2, 6–8; *see also* ECF No. 53-1 ("Second Granda Decl.") ¶¶ 2, 5; ECF No. 51 ("First Order"); ECF No. 55 ("Second Order"). CalPERS therefore continues to violate the Americans with Disabilities Act ("ADA"). Moreover, without 24-hour skilled nursing care, Sara *remains* at serious risk of institutionalization, medical complications, and death. Third Granda Decl. ¶ 4; *see also* ECF No. 49-3 ("Dr. Miner Decl.") ¶¶ 10–11,13; ECF No. 49-2 ("First Granda Decl.") ¶¶ 6, 10, 27, 60. An injunction to get Sara the care she needs and to prevent ongoing discrimination is imperative.

The ADA requires public entities to administer services to individuals with disabilities in the most integrated setting, which here, is Sara's home. 42 U.S.C. § 12132; 28 C.F.R. § 35.130; *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 599 (1999); *M.R. v. Dreyfus*, 697 F.3d 706, 720 (9th Cir. 2012). This is because "[u]njustified isolation . . . is properly regarded as discrimination based on disability." *Olmstead*, 527 U.S. at 597. The ADA requires public entities to provide community-based treatment for individuals with disabilities when the public entity's treatment professionals determine that community-based placement is appropriate, the individual wishes to be in the community, and the placement can be reasonably accommodated. *Id.* at 607. "[A] plaintiff need only show that [a] challenged state action creates a serious risk of institutionalization." *M.R. v. Dreyfus*, 697 F.3d at 734.

HOOPER, LUNDY & BOOKMAN, P.C.
44 MONTGOMERY STREET, SUITE 3500
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

Sara wants to receive care in her home, among her community. This can be reasonably accommodated via appropriate 24-hour skilled nursing care, and has been accommodated in the past. First Granda Decl. ¶¶ 30, 36, 41, 57. However, Sara is not getting such care now. Against this backdrop, Sara sought a narrow temporary restraining order that requires CalPERS to: "(1) provide Sara appropriate 24-hour skilled nursing care from qualified Licensed Vocational Nurses ("LVNs") and Registered Nurses ("RNs") to ensure that Sara can receive care in the least restrictive environment possible, her home; (2) provide reimbursement rates sufficient to ensure the provision of such care; (3) provide sufficient care coordination to manage such care; and (4) meet with Sara in light of any changed circumstances related to Sara's care needs." ECF No. 49-6.

This Court ordered this relief in its order granting Sara's motion for a temporary restraining order (First Order), and again in ordering CalPERS to comply with the First Order (Second Order). Sara respectfully requests this Court order an injunction granting the same relief. Sara also requests this Court to require CalPERS to reimburse skilled nursing care and care coordination within 10 days, at the rates required by immediately available skilled nursing providers and care coordinators, until further order of the Court.

## II. AN INJUNCTION SHOULD ISSUE BECAUSE CALPERS' DISCRIMINATION AGAINST SARA PLACES HER AT RISK OF INSTITUTIONALIZATION

Sara references and incorporates the facts of this case and her legal arguments as set forth in her Motion. The analysis for a temporary restraining order and a preliminary injunction are "substantially identical." *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.,* 240 F.3d 832, 839 n. 7 (9th Cir. 2001). To prevail on a preliminary injunction, a plaintiff must demonstrate likelihood of success on the merits, likelihood of suffering irreparable harm in the absence of preliminary relief, that the balance of equities tips in the plaintiff's favor, and that an injunction

is in the public interest. *M.R. v. Dreyfus*, 697 F.3d at 725 (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). Sara should prevail on a preliminary injunction, just as she did on a temporary restraining order.[1]

The facts and law remain much the same as set forth in Sara's Motion. Sara is likely to prevail on the merits of her ADA claim, Motion at 14–18, and will suffer irreparable harm without an injunction, *id.* at 18–20. The balance of the equities still tips in Sara's favor, *id.* at 20–21, and an injunction still favors the public interest, *id.* at 21. If anything, the grounds for this Court to issue an injunction are even stronger now, as—despite the Court's First Order and Second Order—Sara continues to be at risk of irreparable harm, tipping the balance of the equities further in Sara's favor and making an injunction even more in the public interest.

## III. THE NEED FOR AN INJUNCTION IS DEMONSTRATED BY CALPERS' FAILURE TO COMPLY WITH THE FIRST AND SECOND ORDER

As noted, the crux of the First Order directs *CalPERS* to provide Sara with 24-hour skilled nursing care, provide reimbursement rates sufficient to ensure the provision of such care, and to provide sufficient care coordination to manage such care. ECF No. 51 at 2. Moreover, CalPERS is to provide a written report advising how it will provide Sara with skilled nursing care and care coordination. *Id.* at 2–3 ((a) and (d)). CalPERS has failed on all fronts.

First, Sara still does not have 24-hour skilled nursing care. She also does not have care coordination services. She is living a nightmare, scrambling to find anybody to ensure she is not left alone. Second Granda Decl. ¶ 4; Third Granda Decl. ¶¶ 2, 5–9. Sara continues to do everything related to her medical care and

---

[1] Sara also prevails on the standard for a mandatory injunction because the law and the facts clearly favor Sara. *LA All. for Hum. Rts. v. Cnty. of Los Angeles*, 14 F.4th 947, 956 (9th Cir. 2021).

nursing care on her own, top to bottom, 100% of the time, minute by minute, hour by hour, and day by day, and is exhausted.  Third Granda Decl.  ¶¶ 7, 9.

Second, despite the First Order and Second Order, CalPERS has failed to arrange for consistent 24-hour skilled nursing care.[2]  *See* Third Granda Decl. ¶¶ 2, 5–6, 8.

Third, CalPERS still has not offered a viable long-term reimbursement solution.  CalPERS historically paid $45/hr for LVNs and $56/hr for RNs.  First Granda Decl. ¶ 15, *id.* at Ex. 3.  Those rates, which had not been updated since 2012, are insufficient as demonstrated by the fact that Sara does not have 24-hour skilled nursing care.  *Id.* at ¶¶ 9, 10, 16; Second Granda Decl. ¶¶ 2, 4–5; Third Granda Decl. ¶ 2.  CalPERS then proposed a rate increase to $75/hr for LVNs and $86/hr for RNs.  ECF No. 52 ("First Status Report") at 3.  CalPERS stated that these are the rates "Ms. Granda says she paid in 2023" after making out-of-pocket payments.  *Id.* (citing First Granda Decl. ¶ 64).  But what Sara actually said is that $75/hr for LVNs and $86/hr for RNs "no longer is effective, as I am currently left without any LVNs or RNs."  First Granda Decl. ¶ 64.

CalPERS noted that its proposed rate increase to $75/hr for LVNs and $86/hr for RNs was sent to Sara previously, and attached the accompanying "Settlement Agreement and Release."  First Status Report at 3, *id.* Ex. 1.  It was improper for CalPERS to attach the "Settlement Agreement and Release," which was a draft of a confidential settlement agreement, to provide the validity of CalPERS' claim that

---

[2] CalPERS has not complied with provision (a) of the First Order because CalPERS has not articulated how it will provide Sara with appropriate 24-hour skilled nursing care.  CalPERS notes in its Third Status Report (ECF No. 57) that it satisfied provision (a) by filing its First Status Report.  But CalPERS First Status Report is devoid of details as to how CalPERS would actually ensure skilled nurses and care coordinators start providing services immediately.

HOOPER, LUNDY & BOOKMAN, P.C.
44 MONTGOMERY STREET, SUITE 3500
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

the rates are sufficient, or otherwise. See Fed. R. Evid. 408.[3]

Absent any meaningful action by CalPERS, Sara has been left trying to arrange for skilled nursing care and care coordination on her own. Third Granda Decl. ¶¶ 6–9. Sara has identified an agency that indicated it could provide immediate skilled nursing care and care coordination at $110-160/hr for RN services and $90-120/hr for LVN services. Third Granda Decl. Ex. 1 at 1. However, this agreement has not been executed due to the agency's concerns regarding timely payment. Third Granda Decl. ¶ 6. This agreement is a potential short term solution. Third Granda Decl. ¶¶ 5–6, 8. A long term solution is still needed. *Id.* at ¶ 8.

Enough is enough. Sara continues to live a nightmare. Second Granda Decl. ¶ 4; Third Granda Decl. ¶¶ 6–9. An injunction is needed to remedy CalPERS' failure to ensure Sara gets the care she needs. CalPERS' actions are unlawfully discriminatory, and Sara respectfully seeks an injunction to stop it.

## IV. CONCLUSION

Based on the foregoing and accompanying declarations and exhibits cited herein, Sara respectfully requests the Court issue an injunction requiring CalPERS to cease discriminating against Sara by requiring CalPERS to:

(a) provide Sara appropriate 24-hour skilled nursing care from qualified Licensed Vocational Nurses ("LVNs") and Registered Nurses ("RNs") to ensure that Sara can receive care in the least restrictive environment possible, her home;

(b) provide reimbursement rates sufficient to ensure the provision of such care;

(c) provide sufficient care coordination to manage such care;

---

[3] The proposed settlement agreement was sent to Sara's counsel on May 3, 2024. When attached, the document was marked "Granda-Confidential Settlement Agreement." CalPERS conveniently omitted "Confidential" when producing the proposed agreement to the Court. Garcia Decl. in Support of Additional Briefing and Evidence ¶¶ 2–4.

(d) meet with Sara in light of any changed circumstances related to Sara's care needs; and

(e) reimburse skilled nursing care and care coordination within 10 days, at the rates required by immediately available skilled nursing providers and care coordinators, until further order of the Court.

DATED: May 22, 2024　　　　　ARIAS SANGUINETTI WANG & TORRIJOS

By: /s/ Matthew J. Kita
　　　MATTHEW J. KITA
Attorneys for Plaintiffs Sara Granda and Jose Granda

DATED: May 22, 2024　　　　　HOOPER, LUNDY & BOOKMAN, P.C.

By: /s/ Paul L. Garcia (as authorized on May 22, 2024)
　　　PAUL L. GARCIA
Attorneys for Plaintiff Sara Granda