Jason Levin (SBN 161807)
jason.levin@alston.com
Lisa Garcia (SBN 301362)
lisa.garcia@alston.com
Alina Ananian (SBN 322905)
alina.ananian@alston.com
**ALSTON & BIRD LLP**
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071-1410
Telephone: 213-576-1000
Facsimile: 213-576-1100

Attorneys for Defendant
CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT SYSTEM

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| SARA GRANDA, an individual; JOSE GRANDA, an individual,<br><br>    Plaintiffs,<br><br>    v.<br><br>CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT SYSTEM; and DOES 1-10, Inclusive,<br><br>    Defendants. | Case No.: 2:21-CV-01256-DAD CSK<br><br>*Hon. Dale A. Drozd*<br><br>**CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT SYSTEM'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>*[Filed concurrently with Declaration of Lisa Garcia]*<br><br>Hearing Date:  August 4, 2025<br>Time:  1:30 p.m.<br>Location:  Via Zoom<br><br>Complaint Filed:  July 16, 2021<br>Trial Date:  None |

1

# TABLE OF CONTENTS

I.     INTRODUCTION .................................................................................................. 6

II.    PLAINTIFFS' TITLE II CLAIM IS BARRED BY THE INSURANCE SAFE HARBOR ................................................................................................. 7

       A.    PERS Platinum Falls within the Safe Harbor ........................................... 7
       B.    The PERS Platinum Plan is not a Subterfuge ........................................... 8
       C.    There Can Be No ADA Claim Based on CalPERS's Purported Breach of its Settlement Agreement with Plaintiffs ............................... 10
       D.    "Public Policy" Does Not Warrant a Departure from the Text of the Safe Harbor ........................................................................................ 12

III.   PERS PLATINUM IS AN EMPLOYMENT BENEFIT NOT COVERED BY TITLE II .......................................................................................................... 12

IV.    CALPERS HAS ELEVENTH AMENDMENT IMMUNITY FROM PLAINTIFFS' TITLE II CLAIM ....................................................................... 15

V.     CONCLUSION .................................................................................................... 18

# **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Barden v. City of Sacramento,*
   292 F.3d 1073 (9th Cir. 2002) ..................................................................10

*Bd. of Trs. v. Garrett,*
   531 U.S. 356 (2001) ..................................................................................15

*Currie v. Grp. Ins. Comm'n,*
   147 F. Supp. 2d 30 (D. Mass. 2001) ......................................................7, 12

*Currie v. Grp. Ins. Comm'n,*
   290 F.3d 1 (1st Cir. 2002) ....................................................................7, 12

*D'Agostino v. Ariz. Dep't of Econ. Sec.,*
   623 F. Supp. 3d 1009 (D. Ariz. 2022) .......................................................14

*Dougherty v. Golden Gate Bridge, Highway & Transp. Dist.,*
   31 F. Supp. 2d 724 (N.D. Cal. 1998).........................................................14

*Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.,*
   525 F.3d 822 (9th Cir. 2008) ......................................................................9

*Fresenius Med. Care Cardiovascular Res. Inc. v. Puerto Rico,*
   322 F.3d 56 (1st Cir. 2003)........................................................................14

*Granda v. Cal. Pub. Emps'. Ret. Sys.,*
   620 F. Supp. 3d 1038 (E.D. Cal. 2022) ................................................10, 12

*Hartzell v. Marana Unified Sch. Dist.,*
   130 F.4th 722 (9th Cir. 2025).....................................................................11

*Kitchen v. Lodi Unified Sch. Dist.,*
   No. 2:14-01436 WBS EFB, 2014 WL 5817320 (E.D. Cal. Nov. 4, 2014)........11

*Kohn v. State Bar of Cal.,*
   119 F.4th 693 (9th Cir. 2024).....................................................................14

*Leonard F. v. Israel Disc. Bank,*
   199 F.3d 99 (2d Cir. 1999) ..........................................................................8

CALPERS'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

*Mallison v. Conn. Office of Early Childhood,*
 657 F. Supp. 3d 221 (D. Conn. 2023) ...................................................................14

*Musgrove v. Bd. of Regents of the Univ. Sys. of Ga.,*
 No. 3:18-CV-80 (CDL), 2019 WL 13301434 (M.D. Ga. Feb. 14, 2019) ..........16

*Olmstead v. L.C. ex rel. Zimring,*
 527 U.S. 581 (1999)................................................................................12, 14, 16

*Pallozzi v. Allstate Life Ins. Co.,*
 198 F.3d 28 (2d Cir. 1999) .....................................................................................8

*Public Employees Retirement Sys. of Ohio v. Betts,*
 492 U.S. 158 (1989)................................................................................................8

*Rogers v. Dep't of Health & Envtl. Control,*
 174 F.3d 431 (4th Cir. 1999) ..................................................................................7

*S.E.C. v. Stein,*
 906 F.3d 823 (9th Cir. 2018) ..................................................................................9

*Stanley v. City of Sanford,*
 222 L. Ed. 2d 331 (2025).......................................................................................13

*T.W. v. N.Y. State Bd. of Law Exam'rs,*
 110 F.4th 71 (2d Cir. 2024) .............................................................................15, 16

*Toledo v. Sanchez,*
 454 F.3d 24 (1st Cir. 2006)....................................................................................15

*United States v. Brown,*
 996 F.3d 998 (9th Cir. 2021) ..................................................................................6

*Weyer v. Twentieth Century Fox Film Corp.,*
 198 F.3d 1104 (9th Cir. 2000) ......................................................................6, 7, 14

*Where Do We Go Berkeley v. Cal. DOT,*
 32 F.4th 852 (9th Cir. 2022) .................................................................................10

*Y.A. v. Hamtramck Pub. Sch.,*
 137 F.4th 862 (6th Cir. 2025)................................................................................15

*Zimmerman v. Or. DOJ,*
 170 F.3d 1169 (9th Cir. 1999) ......................................................................5, 11, 12

CALPERS'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**FEDERAL STATUTES**

42 U.S.C.S. § 12201, subd. (c) ..............................................................................7

42 U.S.C. § 12201 ..................................................................................................6

42 U.S.C. § 12201(c)(2)..........................................................................................7

Americans with Disabilities Act ...........................5, 6, 9, 10, 11, 12, 13, 14, 15, 16

CALPERS'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs' opposition does not cite even a single case holding a benefits administrator liable under Title II of the ADA. Instead, like the proverbial advocate who has neither the law nor the facts on his side, Plaintiffs focus on their conception of "public policy." They argue there is "no *conceivable* public-policy reason to create a special immunity" from the ADA for public entities like CalPERS. Opp. at 10 (emphasis in original). In fact, it is very easy to conceive of that "special immunity" because Congress explicitly provided one in the form of the ADA safe harbor for administering insurance programs. More broadly the Congressional policy embodied in the safe harbor buttresses all three of CalPERS's arguments for summary judgment.

Starting with the safe harbor itself, CalPERS cited three cases supporting its application here, and Plaintiffs – lacking any legal support for their own position – ineffectively nitpick all three. Plaintiffs then: 1) assert that the focus of their ADA claim is not really PERS Platinum but CalPERS's purported breach of its 1998 private settlement with Sara Granda; and 2) ask for discovery on whether PERS Platinum, which has already paid Plaintiffs millions of dollars, might be a subterfuge. Plaintiffs' arguments make no sense: Title II does not govern private settlement agreements, and an insurance plan that indisputably exists and pays benefits cannot be a subterfuge.

The safe harbor is also consistent with *Zimmerman's* holding that employment-related claims are not cognizable under Title II. *Zimmerman v. Or. DOJ*, 170 F.3d 1169, 1173 (9th Cir. 1999) ("Congress unambiguously expressed its intent for Title II not to apply to employment."). Because the broad term "employment" includes the PERS Platinum insurance that Ms. Granda receives as a benefit of Mr. Granda's employment with the State, this action is barred by *Zimmerman*. Plaintiffs argue that *Zimmerman* should be applied narrowly to exclude only those Title II claims "*by employees* for benefits that *affect their ability to work*." Doc. 140 at p. 9 (emphasis in original). But neither *Zimmerman* nor any of its progeny supports that narrowing.

Finally, the insurance safe harbor makes it impossible for Plaintiffs to show an exception to CalPERS's Eleventh Amendment immunity. The safe harbor demonstrates that Congress did not consider the administration of insurance to be a historical source of discrimination against the disabled.

Accordingly, the Court should grant CalPERS's motion for summary judgment.

## II. PLAINTIFFS' TITLE II CLAIM IS BARRED BY THE INSURANCE SAFE HARBOR

### A. PERS Platinum Falls within the Safe Harbor

CalPERS supported its discussion of the insurance safe harbor with two appellate court decisions and one district court decision. These decisions broadly construed the insurance safe harbor, 42 U.S.C. § 12201, to protect insurance administrators from ADA litigation. Plaintiffs, lacking contrary authorities, fail to distinguish these cases.

The Ninth Circuit in *Weyer* characterized the safe harbor as "Congress's clear instruction" that the ADA "was not intended to reach common insurance practices such as underwriting of risks." *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1118 (9th Cir. 2000). In *Weyer*, a plaintiff brought a Title III claim against UNUM, the administrator of her allegedly discriminatory disability insurance. UNUM argued that the Title III claim should be dismissed for three reasons, one of which was that "its activities fall within the Act's safe harbor for insurance underwriting." *Id*. at 1114. The Ninth Circuit held that "each reason," including the safe harbor, is "independently sufficient to prevent Weyer's suit against UNUM under Title III." *Id*. at 1114-1115.

Plaintiffs lack a meaningful response to *Weyer*. They assert that *Weyer's* references to the safe harbor are "nothing more than dicta." Opp. at 12. But *Weyer* actually applied the safe harbor to reach an alternative holding, and an "alternative holding is not dicta." *United States v. Brown*, 996 F.3d 998, 1010 (9th Cir. 2021).

Plaintiffs then argue that *Weyer's* holding should be limited to Title III actions by "currently covered family members of current employees." Opp. at 12. But *Weyer* provides no such limitation, which in any event would be inconsistent with the safe harbor's statement that it applies to all claims under "Titles I through IV of this Act," without regard to employment status. 42 U.S.C. § 12201(c)(2).

*Weyer* cited *Rogers,* where the Fourth Circuit applied the safe harbor to the state agency that administered a long-term disability plan for South Carolina employees. *Rogers v. Dep't of Health & Envtl. Control*, 174 F.3d 431, 435 (4th Cir. 1999). Plaintiffs argue that *Rogers*'s broad reading of the safe harbor is limited to "parity of coverage" disputes. Opp. at 12. But neither the text of the safe harbor nor any decision Plaintiffs cite identifies or supports that purported limitation.

The third case CalPERS cited was *Currie*, where a district court extended the insurance safe harbor to the Massachusetts state agency that administered long-term disability insurance for state employees. *Currie v. Grp. Ins. Comm'n*, 147 F. Supp. 2d 30, 37 (D. Mass. 2001). On appeal, the plaintiff argued that the safe harbor did not apply because the insurance administrator's actions were "inconsistent with State law." *Id*. at 37. The First Circuit noted the existence of an ongoing state court appeal affecting the safe harbor and stated that the "immediate issue" was "whether this court should proceed to resolve the merits of this case while an appeal proceeds in parallel litigation in the state courts on an issue of state law which could moot or otherwise inform the federal litigation," specifically including the safe harbor. *Currie v. Grp. Ins. Comm'n*, 290 F.3d 1, 3, 9 (1st Cir. 2002). The First Circuit decided to stay the plaintiff's appeal. *Id*. at 13. It did not, as Plaintiffs assert, "refuse[] to adopt the district court's analysis of the 'safe-harbor' issue." Opp. at 13.

All three cases that CalPERS cited support application of the safe harbor to PERS Platinum. Plaintiffs' unsupported rhetoric changes nothing.

### B. The PERS Platinum Plan is not a Subterfuge

The safe harbor does not protect an insurance plan that is a "subterfuge." 42

U.S.C.S. § 12201, subd. (c). An insurance plan is not a subterfuge, however, when it "exists and pays benefits" without scheme or evasion. *See Public Employees Retirement Sys. of Ohio v. Betts*, 492 U.S. 158, 166 (1989) (decided under the "subterfuge" provision of the Age Discrimination in Employment Act of 1967).

Plaintiffs argue that "CalPERS's motion does not cite to any evidence in support of its conclusory assertion that 'PERS Platinum is not a subterfuge.'" Opp. at 13. It is Plaintiffs, however, who have the burden—they must both plead and then prove that PERS Platinum *is* a subterfuge. *Pallozzi v. Allstate Life Ins. Co*., 198 F.3d 28, 36 (2d Cir. 1999) ("the plaintiff has the . . . obligation to plead (and prove) that the insurance practice complained of is not consistent with state law or is being used as a 'subterfuge to evade the purposes' of Titles I and III of the Act.").

CalPERS in any event *has* shown that PERS Platinum is not a subterfuge. The declaration of Donald B. Moulds, Ph.D., CalPERS's chief health director, describes PERS Platinum, its EOC, and its past payment of millions of dollars towards Ms. Granda's care. Doc. 136-15 at ¶ 10 ("In 2022 and earlier years, the plan's yearly costs for Ms. Granda's care never exceeded $1 million. Over the last 12 months, however, PERS Platinum has paid, on average, $170,533.33 per month for Ms. Granda's in-home care alone, $2,046,400 on an annualized basis."). Dr. Moulds's declaration demonstrates that PERS Platinum "exists and pays benefits" (*Betts*), and is not "a deception by artifice or a stratagem to conceal, escape, avoid or evade." *Leonard F. v. Israel Disc. Bank*, 199 F.3d 99, 105 (2d Cir. 1999). Accordingly, Plaintiffs do not and cannot reasonably dispute that PERS Platinum is not a subterfuge.

Even so, Plaintiffs demand that they be given the opportunity to take depositions of CalPERS's "undisclosed" witnesses on PERS Platinum. Opp. at 13-14. If Plaintiffs are suggesting that Dr. Moulds was an undisclosed witness, they are wrong. In fact, Plaintiffs themselves named Dr. Moulds as a witness in 2023. Declaration of Lisa Garcia ("Garcia Decl.") at ¶ 2, Exh. A at p. 2. CalPERS also identified Dr. Moulds as a witness in 2023, describing his knowledge of:

CALPERS'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1. The PERS Platinum plan of which Plaintiffs are members, including but not limited to the conditions for membership, premium setting, and benefits.

2. CalPERS' administration of the PERS Platinum plan.

3. CalPERS' reasonable efforts to accommodate Sara Granda's requests.

4. The economic and administrative costs that would be imposed by acceding to Sara Granda's requests, and other reason her requests are unreasonable, including the fundamental alterations they would impose on CalPERS' administration of health benefits.

Garcia Decl. at ¶ 3, Exh. B at p. 2.

Plaintiffs chose not to take Dr. Moulds's deposition — or the deposition of any other witness — on their new "subterfuge" theory. Only now, in an effort to stave off summary judgment, do Plaintiffs assert that CalPERS witnesses may have discoverable information on PERS Platinum's "discriminatory intent," whatever that means. Opp. at 13-14. Plaintiffs' vague and speculative request for discovery is not grounds for a continuance. *See Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008) (continuance requires statement of specific facts to be elicited from further discovery and explanation for how those "sought-after facts are essential to oppose summary judgment."); *S.E.C. v. Stein*, 906 F.3d 823, 833 (9th Cir. 2018) ("mere speculation" that additional facts will be discovered is not grounds for continuance.).

**C. There Can Be No ADA Claim Based on CalPERS's Purported Breach of its Settlement Agreement with Plaintiffs**

Finally, Plaintiffs try to evade the insurance safe harbor by reframing their case to eliminate its dependence on PERS Platinum:

> Plaintiffs are *not* complaining about 'the terms of PERS Platinum' for California's state employees *as a whole*. Instead, Plaintiffs have alleged that CalPERS violated Title II through its discriminatory performance of a *separate* agreement that CalPERS made with Plaintiffs with regard to the allocation of funds in *their particular* PERS Platinum program.

Doc. 140 at 11.

The "separate agreement" to which Plaintiffs refer is Ms. Granda's private settlement with CalPERS in 1998, modified in 2012, which followed Ms. Granda's complaint "that the [PERS Platinum (fka PERSCare)] plan did not provide sufficiently for her need for in-home health services." (Compl. ¶ 23.) Under the settlement agreement, PERS Platinum pays fixed sums towards Sara Granda's 24-hour nursing care: up to $45/hour for LVNs and $56/hour for RNs. Doc. 140-3 at ¶ 15. The agreement also requires CalPERS to "meet with Sara" to discuss reimbursement rate adjustments, which CalPERS allegedly refused to do. Opp. at 16. Plaintiffs suggest that CalPERS also discriminatorily breached its agreement to increase reimbursement rates for Ms. Granda's providers. But Plaintiffs neither alleged this contractual duty nor provided evidence of its existence.

Whatever the alleged contract breach might be, it makes no sense to present it as a Title II claim. Title II requires as a predicate the pleading of a specific discriminatory "program" provided by a public entity. *See Where Do We Go Berkeley v. Cal. DOT*, 32 F.4th 852, 860 (9th Cir. 2022) ("we must first define the Caltrans 'programs' subject to the ADA."). Plaintiffs did not (and could not credibly) allege that CalPERS's specific obligations under its specific settlement agreement with Sara is a CalPERS "program" under Title II. [1] Plaintiffs alleged, instead, that "PERSCare is a program, service or activity of CalPERS, which Sara Granda has been improperly excluded from due to the refusal to make modifications as alleged herein." Doc. 1, Complaint, at ¶ 35; see also *Granda v. Cal. Pub. Emps'. Ret. Sys.*, 620 F. Supp. 3d 1038, 1044 (E.D. Cal. 2022) (identifying "provid[ing] benefits, including insurance coverage, to public employees" as the CalPERS program subjecting it to Title II.).

Title II reaches only a "normal function of a governmental entity." *See Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002). Complying (or not complying) with a one-off, private settlement agreement is not a CalPERS

---

[1] CalPERS's alleged failure to perform under "a separate agreement that CalPERS made with plaintiffs" sounds like a breach of contract claim, but adding the word "discriminatory" further confuses things. What is a "discriminatory performance of a separate agreement that CalPERS made with Plaintiffs …?" Discriminatory as compared to what?

"program."[2] As such, it cannot be the basis for a Title II cause of action.

### D. "Public Policy" Does Not Warrant a Departure from the Text of the Safe Harbor

Plaintiffs complain that if their Title II claim against CalPERS succumbs to the insurance safe harbor, the purported "victims" of CalPERS's discrimination would "have no legal remedy under the Americans with Disabilities Act whatsoever." Opp. at 11. But Ms. Granda is not a victim of discrimination. She received every benefit PERS Platinum provides. If PERS Platinum benefits are insufficient to meet Ms. Granda's medical needs, that is not an issue of discrimination. Ms. Granda can obtain additional benefits through Medi-Cal. (CalPERS raised the availability of Medi-Cal in its Motion; Plaintiffs ignored it.)

Plaintiffs also suggest that the Court should refrain from applying the safe harbor because of "the peculiarity of the issue presented…." Opp. at 11. While Plaintiffs' argument is indeed peculiar, that fact does not empower the Court to expand the ADA while at the same time diminishing its safe harbors.

## III. PERS PLATINUM IS AN EMPLOYMENT BENEFIT NOT COVERED BY TITLE II

PERS Platinum is undisputedly an employment benefit. PERS Platinum is therefore not a program subject to Title II because, under *Zimmerman*, Title II does not apply to "employment," which is an "input" rather than an "output." *Zimmerman,* 170 F.3d at 1173 ("Congress unambiguously expressed its intent for Title II not to apply to employment."); *see also Kitchen v. Lodi Unified Sch. Dist.,* No. 2:14-01436 WBS EFB, 2014 WL 5817320, at *4 (E.D. Cal. Nov. 4, 2014) ("it is clear that [a retirement health benefits] program is not generally available to the public. An

---

[2] Even if CalPERS's compliance with a private settlement agreement were a cognizable "program" under Title II, that is not what the Complaint alleges, and Plaintiffs cannot unilaterally change their theory of the case mid-stream. *Hartzell v. Marana Unified Sch. Dist.*, 130 F.4th 722, 744 (9th Cir. 2025), citing *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292-1293 (9th Cir. 2000) ("After having focused on theory in their complaint and during discovery, plaintiffs cannot turn around and surprise the defendant at the summary judgment stage" with a completely different theory.) (citation modified).

individual becomes eligible for retirement health benefits as a direct result of his or her employment relationship with the school district.").

Plaintiffs disagree. They assert that *Zimmerman* does not save CalPERS because *Zimmerman* applies only to ADA claims "*by employees* for benefits that *affect their ability to work.*" Opp. at 9 (emphasis in original); *see also Granda*, 620 F. Supp. 3d at 1043-44 ("As Plaintiffs point out, every case cited by CalPERS for the proposition that *Zimmerman* is controlling involved a plaintiff who was either a current or former employee of the defendant involved, and whose claims arose from actions taken or not taken within the employment context by that employer.").

Plaintiffs' mistake is conflating *Zimmerman's* actual holding—"employment" is not covered by Title II—with the factual context in which that holding has been applied. While it is true that cases since *Zimmerman* have applied its holding to bar Title II actions by employees against their employers, none of those cases limited *Zimmerman's* reach outside of that context. Moreover, *Currie* explicitly applied *Zimmerman* to preclude a Title II claim against an employment benefits administrator. *Currie,* 147 F. Supp. 2d at 34-35.[3] And Plaintiffs have no response to the motion's contention that by helping administer CSU's employee health insurance program, CalPERS is Mr. Granda's indirect employer for these purposes. Motion, at 21-22.

Plaintiffs respond once again with rhetoric instead of case law. Plaintiffs start with the observation that their *Olmstead* claim is not viable under Title I of the ADA. Opp. at 10 ("neither Sara nor Jose could *ever* allege an *Olmstead* violation under Title I….").[4] Plaintiffs then argue that because they cannot sue CalPERS under Title I of the ADA, they *must* be able to sue CalPERS under Title II. Opp. at p. 10. "[T]here is no *conceivable* public-policy reason to create a special immunity for *these particular*

---

[3] As discussed above, the First Circuit did not reverse *Currie* or "reject" its reasoning. Opp. at 9. The First Circuit did comment, however, that on the issue of whether Title II applies to employment benefits administrators, "[t]he answer is not so plain." *Currie v. Grp. Ins. Comm'n*, 290 F.3d at 6.

[4] Plaintiffs ask the Court to "reject CalPERS's efforts to convince this Court that Plaintiffs should have sought relief under Title I…." Opp. at 10. CalPERS has made no such efforts.

*agencies*—the ones who are uniquely charged with facilitating access to the very medical care on which disabled people *depend*—from the same forms of disability discrimination that the Americans with Disabilities Act was enacted to discourage." Opp. at 10-11 (emphasis in original).

The false premise of this contention (and indeed, Plaintiffs' entire brief) is that there simply must be a remedy for Plaintiffs' allegations under the ADA. CalPERS will take Plaintiffs at their word that they can't state a claim under Title I. But under basic legal principles, the fact that they don't have a claim under Title I does not mean they do have a cognizable claim under Title II, or any other statute or cause of action.

The Supreme Court revisited this principle recently in a related context. In *Stanley v. City of Sanford*, 222 L. Ed. 2d 331 (2025), the Court held that Title I of the ADA does not apply to retired employees' health benefits. In so holding, the Court rejected the plaintiff's policy assertion that "the ADA's goal of eradicating disability-based discrimination would be best served by a decision extending Title I's protections beyond those who hold or seek a job to retirees." *Id*. at 343. As the Court explained:

> For one thing, and as this Court has "emphasized many times," what Congress (possibly) expected matters much less than what it (certainly) enacted. Nobody disputes the ADA's stated ambition to root out "discrimination against individuals with disabilities." But it is "quite mistaken to assume . . . that any interpretation of a law that does more to advance a statute's putative goal must be the law."

*Id*., citations omitted.

Moreover, Plaintiffs' policy argument neglects the Congressional policy behind the safe harbor. The safe harbor itself provides the clearest statement of public policy. See *Jones v. Bradshaw Bar Grp*., Inc., 735 F. App'x 233, 234 (9th Cir. 2017) (rejecting argument that a deadline for the recovery of fees under the ADA undermines "public policy" because the ADA itself does not prohibit deadlines). And the public policy created by the safe harbor is to prevent the threat of ADA litigation

from affecting insurance costs. *Olmstead* does not affect that policy. *See Weyer,* 198 F.3d at 1117-18 ("*Olmstead* does not speak to insurance classifications….").

In short, Plaintiffs' conception of what public policy should be cannot create a cause of action where none otherwise exists, as here.

## IV. CALPERS HAS ELEVENTH AMENDMENT IMMUNITY FROM PLAINTIFFS' TITLE II CLAIM

The safe harbor also plays a role in CalPERS's claim of immunity under the Eleventh Amendment to the United States Constitution. Because of the safe harbor, Plaintiffs cannot prove that an exception to Eleventh Amendment immunity applies.

Plaintiffs' contrary argument begins with improper burden shifting. They argue that "CalPERS has failed to carry its burden to prove that—as a matter of law—Plaintiffs claims for monetary damages for its violations of Title II is barred by the Eleventh Amendment." Opp. at 21. However, the only burden CalPERS carries under the Eleventh Amendment is to prove it is an arm of the State. *See Fresenius Med. Care Cardiovascular Res. Inc. v. Puerto Rico*, 322 F.3d 56, 61 (1st Cir. 2003) (stating that the entity asserting Eleventh Amendment immunity "bears the burden of showing it is an arm of the state"); *Dougherty v. Golden Gate Bridge*, *Highway & Transp. Dist.*, 31 F. Supp. 2d 724, 731 (N.D. Cal. 1998). Because CalPERS is undisputably an arm of the State (Plaintiffs do not dispute this), the burden falls to Plaintiffs to prove an exception to the Eleventh Amendment. *See D'Agostino v. Ariz. Dep't of Econ. Sec.*, 623 F. Supp. 3d 1009, 1012 (D. Ariz. 2022); *Mallison v. Conn. Office of Early Childhood*, 657 F. Supp. 3d 221, 227 (D. Conn. 2023) ("once an entity has shown that it is an arm of the state, the plaintiff bears the burden of establishing that an exception to sovereign immunity applies.").

Plaintiffs suggest that they can meet their burden of proving the Congressional abrogation exception to the Eleventh Amendment. Here, abrogation would require evidence that CalPERS's allegedly discriminatory program – PERS Platinum – either violates the Fourteenth Amendment or fails the so-called prophylactic test. *Kohn v.*

*State Bar of Cal.*, 119 F.4th 693, 698-699 (9th Cir. 2024). Plaintiffs do not come close to meeting their burden on either count.

First, Plaintiffs fail to explain how CalPERS's unwillingness to alter PERS Platinum for Sara Granda's benefit amounts to a Fourteenth Amendment violation. CalPERS's conduct is constitutional if there is "any reasonably conceivable state of facts that could provide a rational basis" for it. *Bd. of Trs. v. Garrett*, 531 U.S. 356, 367 (2001) ("It is the burden is upon the challenging party to negative 'any reasonably conceivable state of facts that could provide a rational basis for the classification.'") Here, Plaintiffs cannot meet their burden of proof so, once again, they reverse it. They announce that they have demonstrated a Fourteenth Amendment violation by the mere fact that "CalPERS has not argued—nor offered any evidence to suggest that its actions towards Sara *were* rational…." Opp. at 17.

Plaintiffs' "no evidence" argument also ignores, again, Dr. Moulds's declaration. Dr. Moulds declares that the EOC for PERS Platinum does not identify in-home nursing care as a plan benefit because of its high cost, which would lead to premium increases and a potential "death spiral." Moulds Dec. ¶ 8. *Of course* it is rational for CalPERS to preserve the plan and keep down insurance premiums for its members. If CalPERS were to ignore the cost of its insurance and provide Ms. Granda with unlimited in-home medical care, *that* would be irrational.

Second, Plaintiffs have failed to prove the prophylactic test. The prophylactic test requires the Court to examine the state's allegedly discriminatory "program" and determine whether it encapsulates the rights that Congress sought to protect when it enacted the ADA. The Court must "***identify precisely***" the aspects of State conduct that purport to violate the ADA. *Y.A. v. Hamtramck Pub. Sch.*, 137 F.4th 862, 869 (6th Cir. 2025); see also *T.W. v. N.Y. State Bd. of Law Exam'rs*, 110 F.4th 71, 87 (2d Cir. 2024) (the prophylactic test applies to the "***specific violations***" [of Title II] at issue," emphasis added); *Toledo v. Sanchez*, 454 F.3d 24, 35 (1st Cir. 2006) (the prophylactic test requires the court to examine "the ***particular category*** of state conduct at issue,"

(emphasis added).

In its Motion, CalPERS identified several cases where, upon examining the specific Title II violation alleged, the court has rejected the abrogation test. The Second Circuit did so just recently in connection with a claim that New York's accommodations for its bar exam were discriminatory. The prophylactic-abrogation test did not apply because the court found *no* legislative history "documenting a pattern of unconstitutional discrimination in the administration of professional licensure examinations by states, in the granting of professional licenses, or regarding occupational choice more generally." *T.W.*, 110 F.4th at 85, 87.

CalPERS also cited the recent district court decisions rejecting abrogation in connection with the public administration of health care insurance. *Musgrove v. Bd. of Regents of the Univ. Sys. of Ga.*, No. 3:18-CV-80 (CDL), 2019 WL 13301434 at *5 (M.D. Ga. Feb. 14, 2019) ("[C]ounsel for Plaintiff has directed the Court to no binding authority holding that Congress validly abrogated Eleventh Amendment immunity for Title II claims by state employees related to their employment benefits.")

CalPERS also argued that Congress demonstrated through the insurance safe harbor its intent *not to regulate* insurance.

Plaintiffs fail to respond to these arguments. They instead relate the more generalized (and therefore irrelevant) history of Congressional concern that persons with qualified disabilities were suffering discrimination in school, at work, and the receipt of public services. Opp. at 18. Plaintiffs also rely on *Olmstead*, where the Supreme Court held that a state Medicaid program was discriminatory because it created "a serious risk of institutionalization." *Olmstead v. L.C. ex rel. Zimring,* 527 U.S. 581 (1999). *Olmstead* had nothing to do with the abrogation exception to the Eleventh Amendment.

/ / /

/ / /

## V.  CONCLUSION

For all the foregoing reasons, the Court should grant CalPERS's motion for summary judgment.


DATED: July 24, 2025                    **ALSTON & BIRD LLP**

By: */s/ Lisa Garcia*
       Jason Levin
       Lisa Garcia
       Alina Ananian
       Attorneys for Defendant California Public
       Employees' Retirement System

CALPERS'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of July 2025, I caused to be electronically transmitted the attached document entitled **CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT SYSTEM'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** to the Clerk of the Court using the CM/ECF System, which will send notification of such filing and transmittal of a Notice of Electronic Filing to all registered CM/ECF users.

*/s/ Lisa L. Garcia*
Lisa L. Garcia

LEGAL02/46334307v7