UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SARA GRANDA, et al.,

Plaintiffs,

v.

CALIFORNIA PUBLIC EMPLOYEES'
RETIREMENT SYSTEM,

Defendant.

No. 2:21-cv-01256-DAD-CSK

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

(Doc. No. 136)

This matter came before the court on August 4, 2025 for a hearing on defendant's May 30, 2025 motion for summary judgment in its favor. (Doc. No. 136.) Attorneys Elise R. Sanguinetti and Matthew J. Kita appeared by video for plaintiffs Sara and Jose Granda. Attorney Jason Levin appeared by video on behalf of defendant California Public Employees' Retirement System ("CalPERS"). For the reasons explained below, the court will grant defendant's motion for summary judgment in its favor.

/////
/////
/////
/////
/////

1

**BACKGROUND**

**A.    Factual Background[1]**

Plaintiff Sara Granda is quadriplegic, ventilator- and wheelchair-dependent, and requires 24-hour skilled nursing assistance, rather than non-licensed caregiving or attendant care, in order to reside at home.  (PUF ¶¶ 1, 2.)  With 24-hour skilled nursing assistance, plaintiff Sara's home is an appropriate place for her to receive skilled nursing care, and she wishes to remain at home.  (PUF ¶ 4.)  Plaintiff Jose Granda, plaintiff Sara's father,[2] is a professor at California State University, Sacramento, and as such, is enrolled as an employee in the CalPERS system and receives health care coverage through CalPERS for himself and his family.  (PUF ¶ 5.)  CalPERS health plans are limited to public employees and retirees and their families as a benefit of public employment.  (DUF ¶ 1.)[3]  Plaintiff Sara is at serious risk of institutionalization because she is no longer able to obtain skilled nursing care at the rates provided by defendant.  (PUF ¶¶ 25, 38–39.)

**B.    Procedural Background**

On July 16, 2021, plaintiffs filed their operative complaint in which they assert one claim for violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131, *et seq.*  (Doc. No. 1.)

On May 30, 2025, defendant filed the pending motion for summary judgment in its favor.  (Doc. No. 136.)  On July 11, 2025, plaintiffs filed their opposition to defendant's motion, and on July 24, 2025, defendant filed its reply thereto.  (Doc. Nos. 140, 141.)

/////

---

[1]  The relevant facts that follow are either undisputed or interpreted in the light most favorable to plaintiffs unless otherwise specified and are derived from the undisputed facts as stated by defendant and responded to by plaintiffs (Doc. No. 136-1 ("DUF")), the documents filed in support of defendant's motion (Doc. Nos. 136-2–136-16), plaintiffs' statement of additional facts (Doc. No. 140-2 ("PUF")), the documents filed in support of plaintiffs' opposition (Doc. Nos. 140-3–140-5), and the documents filed in support of defendant's reply (Doc. Nos. 141-1–141-3).

[2]  The court will refer to each plaintiff by first name to avoid confusion.

[3]  Plaintiffs argue that this information is derived from the declaration of an undisclosed witness, Dr. Donald B. Moulds.  (Doc. No. 140-1 at 2.)  Defendant responds by supplying a copy of its initial disclosures, which disclose Dr. Moulds as a witness with knowledge.  (Doc. No. 141 at 141-3 at 3.)  The court therefore finds that Dr. Moulds is not an undisclosed witness.

**LEGAL STANDARD**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). If the moving party will bear the burden of proof on an issue at trial, "the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B). Indeed, after adequate time for discovery and upon motion, summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment . . . is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita*

3

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits or admissible discovery material in support of its contention that the dispute exists.  *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment.").  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  *Matsushita*, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all inferences supported by the evidence in favor of the non-moving party."  *Walls v. Cent. Contra Costa Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011).  It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 586–87 (citations omitted).

/////

/////

4

**ANALYSIS**

**A.      Plaintiff Sara Granda's Claim**

In its motion, defendant argues that the insurance safe harbor exception to the ADA's requirements effectively bars the claim asserted by plaintiffs and that plaintiffs have not alleged, and cannot establish, that any exception to that safe harbor provision applies here.  (Doc. No. 136 at 22–26.)  In her opposition, plaintiff Sara argues that the safe harbor provision is inapplicable because she has alleged in the complaint that defendant violated Title II through its discriminatory performance of a separate agreement that defendant made with her with respect to the allocation of funds in her particular insurance program.  (Doc. No. 140 at 16–18.)  Plaintiff Sara also suggests that the subterfuge exception to the safe harbor provision may apply in this case.[4]  (*Id.* at 18–19.)

The ADA's insurance safe harbor provision states as follows:

> [The ADA] shall not be construed to prohibit or restrict . . . a person or organization covered by this chapter from establishing, sponsoring, observing or administering the terms of a bona fide benefit plan that are based on underwriting risks, classifying risks, or administering such risks that are based on or not inconsistent with State law[.]

42 U.S.C. § 12201(c)(2).  Plaintiff Sara does not dispute that defendant qualifies as a covered insurer for purposes of this safe harbor provision, nor does she argue that defendant's actions are inconsistent with state law.  (Doc. No. 140.)  Plaintiffs nonetheless complain that "CalPERS has no policy requiring adjustments to reflect the market rates for nursing services or

/////

_____

[4]  The court observes, however, that plaintiffs' counsel essentially disavowed any reliance on the subterfuge exception at the hearing on defendant's motion, arguing that the subterfuge exception is irrelevant here since it does not apply to Title II ADA claims such as the one asserted by plaintiffs here (Doc. No. 140 at 10).  *See* 42 U.S.C. § 12201(c) ("Paragraphs (1), (2), and (3) shall not be used as a subterfuge to evade the purposes of subchapter[s] I and III."); *see also Rogers v. Dep't of Health & Env't Control*, 174 F.3d 431, 437 n.3 (4th Cir. 1999) ("There maybe an issue as to whether the subterfuge provision applies to Title II.  The plain language of the provision suggests that it does not, but Department of Justice regulations assume that it does.").  Accordingly, the court does not consider or address plaintiffs' subterfuge arguments any further in this order.

for the particularized needs of severely disabled enrollees such as Ms. Granda." (Doc. No. 1 at ¶ 26.)

"By putting an insurance company 'safe harbor' in the Act, Congress gained such freedom of choice for policy purchasers and efficiencies for insurers as might accrue if insurance companies were free to decide whether to cover and to what extent to cover various disabilities." *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1116 (9th Cir. 2000) (finding that the insurer's decision to classify risks of mental illness, alcoholism, and drug abuse differently from physical disabilities fell within the safe harbor provision); *see also Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1047 (9th Cir. 2000) (The ADA "does not address the terms of the policies the insurance companies sells."); *EEOC v. Staten Island Sav. Bank*, 207 F.3d 144, 149 (2d Cir. 2000) (recognizing Congress's awareness of the "historic and nearly universal practice inherent in the insurance industry of providing different benefits for different disabilities" and its failure to require that the practice be changed in enacting the ADA); *Fortier v. Hartford Life and Accident Insurance Company*, No. 16-cv-322-LM, 2017 WL 4011147, at *8 (D.N.H. Sept. 11, 2017) ("Although there is a small handful of contrary district court authority . . . the circuits appear to uniformly hold that differential-benefits claims are not cognizable under the ADA.").

Accordingly, here, defendant has the freedom to decide "whether to cover and to what extent to cover" plaintiff Sara's particular disability, even if the result is effectively a failure to accommodate her disability. *Weyer*, 198 F.3d at 1116. In other words, the safe harbor provision permits defendant to "classify[]" plaintiff Sara's in-home quadriplegia care as a greater "underwriting risk[]" than other types of care or other conditions, resulting in the "establishing" and "administering" of an insurance plan that treats such risks differently, capping pay for in-home quadriplegia care below current market rates. 42 U.S.C. § 12201(c)(2).

Outside the Ninth Circuit, some courts have broken down determinations of whether the safe harbor provision applies into whether the alleged discrimination qualifies as a "term" of the benefit plan and whether the term in question is "based on underwriting risks, classification risks, or administering such risks" addressed in 42 U.S.C. § 12201(c)(2). *See E.E.O.C. v. Flambeau,*

6

*Inc.*, 131 F. Supp. 3d 849, 856 (W.D. Wis. 2015), *aff'd,* 846 F.3d 941 (7th Cir. 2017); *Seff v. Broward Cnty.*, No. 10-cv-61437, 2011 WL 13220393, at *3 (S.D. Fla. May 12, 2011), *aff'd sub nom. Seff v. Broward Cnty., Fla.*, 691 F.3d 1221 (11th Cir. 2012).  Though these cases do not further define "term," except to note that it need not be written into the insurance policy itself, they do attempt to define the phrase "based on underwriting risks, classifying risks, or administering such risks." *Flambeau*, 131 F. Supp. 3d at 856.  In addition, these courts have noted that "[a]lthough there is limited case law analyzing these terms, other courts have held that 'underwriting risks, classifying risks, or administering such risks' refers simply to the process of developing an insurance plan." *Id.*  Here, plaintiffs contest the rates defendant has agreed to pay pursuant to an insurance contract.  Such rates qualify as a conventional term of the insurance plan, and they were a product of the development of the insurance plan.  As such, the safe harbor exception applies.

Plaintiff Sara's sole argument to the contrary is that her allegations concern the peculiarities of a separate agreement between the parties rather than parity of coverage across California's state employees as a whole.  (Doc. No. 140 at 16.)  To the extent that plaintiff Sara's allegations concern the peculiarities of a separate agreement between the parties, they do not alter the court's analysis with respect to what the ADA requires, and plaintiff Sara offers no authority to suggest otherwise.  Under the ADA greater, lesser, or equivalent protections can be offered in a contract between the parties, but in all three cases, "the ultimate question" presented by a claim brought pursuant to the ADA "would be not what the parties have agreed to, but what federal law requires[.]" *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 79 (1998).  Thus, here the parties' separate contract may afford plaintiff Sara greater protections than those afforded by the ADA, but in that case the pertinent claim challenging whether the coverage provided by defendant is in accord with the parties' agreement would be one for breach of contract rather than violation of the ADA.

/////

/////

/////

7

For all of the reasons discussed above, the court will grant defendant's motion for summary judgment in its favor as to plaintiff Sara's sole claim for violation of the ADA.[5]

**B.      Plaintiff Jose Granda's Claim**

Finally, the parties agree that plaintiff Jose's claim is derivative of plaintiff Sara's claim. (Doc. Nos. 136 at 31; 140 at 26.)  Accordingly, the court will also grant summary judgment in defendant's favor as to plaintiff Jose's claim.

<strong>CONCLUSION</strong>

For the reasons explained above,

1.      Defendant's motion for summary judgment (Doc. No. 136) is GRANTED;

2.      The Clerk of the Court is directed to ENTER Judgment in favor of defendant; and

3.      The Clerk of the Court is directed to CLOSE this case.

IT IS SO ORDERED.

Dated:    **March 30, 2026**                          _____
DALE A. DROZD
UNITED STATES DISTRICT JUDGE

---

[5]  The court notes that earlier in this litigation defendant did not raise any argument regarding the insurance safe harbor provision in responding to plaintiffs' motion for a temporary restraining order.  As such, the court now reaches a different conclusion regarding the viability of plaintiffs' claim, not because the undersigned disagrees with the court's analysis in addressing the motion for a temporary restraining order, but because it concludes that this newly raised argument has merit.  Further, the court need not address the remaining arguments raised by defendant in support of its pending motion because the court has determined on the basis of defendant's safe harbor provision argument that defendant is entitled to summary judgment in its favor.

8